UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-20353-CR-DAMIAN/D'ANGELO

**UNITED STATES OF AMERICA**,

vs.

**EVENS NECLER MONESTIME,** *et al.,*

    Defendants.
_____/

**ORDER ADOPTING REPORT AND RECOMMENDATIONS [ECF NO. 134]
ON MOTION TO SUPPRESS [ECF NO. 92]**

**THIS CAUSE** is before the Court on Magistrate Judge Ellen D'Angelo's Report and Recommendation ("R&R"), entered on September 26, 2025 [ECF No. 134], recommending that the Court deny Defendants' Motion to Suppress [ECF No. 92] ("Motion to Suppress"). Defendant Evens Necler Monestime ("Monestime") filed timely objections. [ECF No. 139]. The Government filed a Response to Defendant's Objections. [ECF No. 144]. The matter is now ripe for review.

THE COURT has reviewed the Motion to Suppress, the R&R, the Objections and Response thereto, the pertinent portions of the record, and applicable law and is otherwise fully advised in the premises. For the reasons set forth below, this Court adopts the R&R and denies the Motion to Suppress.

**I.  BACKGROUND**

On August 13, 2024, a Grand Jury sitting in the Southern District of Florida returned a twenty-three count Indictment against the Defendants, Angel Joe Gonzalez, Jr. ("Angel Gonzalez"), Monestime, Cristina Azahares ("Azahares"), David Gonzalez, and Adriana

Ginel ("Ginel"), charging them as follows: Count One, as to all Defendants, Conspiracy to Commit Bank Fraud, in violation of Title 18, United States Code, Section 1349; Counts Two through Six, as to all Defendants, Bank Fraud, in violation of Title 18, United States Code, Section 1344; Counts Seven through Ten, as to Defendants Azahares, Angel Gonzalez, Ginel, and David Gonzalez, Aggravated Identity Theft, in violation of Title 18, United States Code, Section 1028A; Counts Eleven through Sixteen, as to Defendants Angel Gonzalez, Monestime, Azahares, and David Gonzalez, Possession of Stolen Mail Keys, in violation of Title 18, United States Code, Section 1704; Count Seventeen, as to Defendants Angel Gonzalez, Monestime, and Azahares, Possession of Fifteen or More Unauthorized Access Devices, in violation of Title 18, United States Code, Section 1029(a)(3); Counts Eighteen and Nineteen, as to Defendants Azahares, Angel Gonzalez, and Monestime, Aggravated Identity Theft, in violation of Title 18, United States Code, Section 1028A(a)(1); Count Twenty, as to all Defendants, Conspiracy to Commit Money Laundering, in violation of Title 18, United States Code, Section 1956(h); Count Twenty-One, as to Defendants Angel Gonzalez and Monestime, Possession with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, Section 841; Count Twenty-Two, as to Defendant Monestime, Possession of Firearms and Ammunition by a Prohibited Person, in violation of Title 18, United States Code, Section 922(g)(8); and Count Twenty-Three, as to Defendants Angel Gonzalez and Monestime, Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii). [ECF No. 3 ("Indictment")].

On June 30, 2025, Monestime filed a Motion to Suppress (ECF No. 92), in which he sought to suppress all evidence seized from his home and curtilage. Defendants Angel

Gonzalez and Azahares filed Motions to join Monestime's Motion to Suppress. *See* ECF Nos. 99, 111.

As set forth in the Motion and discussed in the R&R, some of the evidence, and the bases for obtaining a search warrant, was observed after officers entered the home and curtilage without a warrant. Ultimately, the search of the home revealed six (6) firearms, including AK-style firearms, thirty-seven (37) 7.62 Caliber rounds of ammunition, six (6) .380 Caliber rounds of ammunition, four (4) .223 Caliber rounds of ammunition, eleven (11) .223 Caliber spent casings, ten (10) 9mm spent casings, approximately 167 grams of suspected heroin, approximately 115 grams of suspected cocaine, approximately fifty-five (55) grams of suspected MDMA pills, approximately eleven (11) grams of suspected oxynorolone pills, approximately twenty-five (25) grams of suspected Xanax, approximately three (3) grams of an unknown substance, a scale and baggies, six (6) United States Postal Service Arrow Keys, hundreds of checks addressed to and by different persons and companies, twenty-seven (27) cell phones, six (6) laptops, a digital video recorder, and two (2) Apple iPads, all of which were seized by law enforcement. *See* ECF No. 103 ("Government Response to Motion to Suppress").

In the Motion to Suppress, Monestime argued that all of the seized evidence should be suppressed because the warrantless searches were not based on an actual emergency or exigency, the warrant that was ultimately issued failed to describe items to be seized with particularity, and the warrant application included material misrepresentations and omissions warranting a *Franks* Hearing. *See* generally Mot to Suppress.

The Magistrate Judge held an evidentiary hearing on the Motion on July 25, 2025. *See* ECF No. 116. Thereafter, the Magistrate Judge recommended the denial of the Motion to

Suppress. *See* R&R. Defendant Monestime filed Objections [ECF No. 139] to the Magistrate Judge's R&R, to which the Government filed a Response [ECF No. 144]. Monestime objects to the Magistrate Judge's determinations that (1) exigent circumstances justified the warrantless entry into the Defendants' home; (2) a *Franks* Hearing was not warranted; (3) the objections to the overbreadth and lack of particularity of the search warrant need not be addressed; and (4) all evidence need not be suppressed as fruit of the poisonous tree. Upon an independent and *de novo* review of the record, including a review of the transcript, and for the reasons that follow, this Court overrules Monestime's Objections.

## II. LEGAL STANDARD

The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3). The Court "must consider *de novo* any objection to the magistrate judge's recommendation." Fed. R. Crim. P. 59(b)(3). A *de novo* review is therefore required if a party files "a proper, specific objection" to a factual finding contained in the report. *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). *De novo* review requests the district court to independently consider factual issues based on the record. *Jeffrey S. ex rel. Ernest S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 513 (11th Cir. 1990). "[A]lthough *de novo* review does not require a new hearing of witness testimony, it does require independent consideration of factual issues based on the record." *Id.* (citation omitted). If the magistrate judge made findings based on witness testimony, the district court must review the transcript or listen to a recording of the proceeding. *Id.* This Court has reviewed the entire transcript of the suppression hearing, as well as the evidentiary materials.

4

"It is critical that the objection be sufficiently specific and not a general objection to the report" to warrant *de novo* review. *Macort*, 208 F. App'x at 784. A party's objections are improper, however, if they expand upon and reframe arguments already made and considered by the magistrate judge, or simply disagree with the magistrate judge's conclusions. *See Melillo v. United States*, No. 17-CV-80489, 2018 WL 4258355, at *1 (S.D. Fla. Sept. 6, 2018) (Bloom, J.); *see also Marlite, Inc. v. Eckenrod*, No. 10-23641-CIV, 2012 WL 3614212, at *2 (S.D. Fla. Aug. 21, 2012) (Moreno, J.) ("It is improper for an objecting party to . . . submit [ ] papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge. Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections to a R & R.") (quoting *Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)). When the objecting party has not properly objected to the magistrate judge's findings, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Keaton v. United States*, No. 14-21230-CIV, 2015 WL 12780912, at *1 (S.D. Fla. May 4, 2015) (Altonaga, J.); *see also Lopez v. Berryhill*, No. 17-CV-24263, 2019 WL 2254704, at *2 (S.D. Fla. Feb. 26, 2019) (Ungaro, J.) (stating that a district judge "evaluate[s] portions of the R & R not objected to under a clearly erroneous standard of review" (citing *Davis v. Apfel*, 93 F. Supp. 2d 1313, 1317 (M.D. Fla. 2000))).

### III.   DISCUSSION

The Magistrate Judge provided a thorough recitation of the facts in her R&R. Consequently, a summary of the facts related to the Motion to Suppress is not necessary, as this Court adopts the Magistrate Judge's findings of fact.

### A. Monestime's Objections.

As an initial matter, this Court observes that Monestime's Objections are nothing more than a rehashing of the same arguments, somewhat expanded upon, that he made in the underlying Motion to Suppress. Monestime essentially disagrees with the Magistrate Judge and asks this Court to address the very same arguments he presented to her. This is improper and is sufficient basis for this Court to review the R&R under the clear error standard. Nonetheless, this Court has engaged in a *de novo* review of the record (which review confirms that Monestime is making the same arguments before this Court that he made to the Magistrate Judge).

### B. Exigent Circumstances.

In his Objections, Monestime asserts the Magistrate Judge erred in concluding that exigent circumstances justified the warrantless entry into Defendants' home and curtilage. According to Monestime, no exigency existed to justify the warrantless entry into his home, and the purported justifications were "unreliable, speculative, and legally insufficient." Obj. at 4. More specifically, Monestime argues that the ShotSpotter alerts were unreliable and did not create an exigency, that the anonymous tip cited by the officers was uncorroborated and insufficient, and that the evidence of dried blood stain on Monestime's pants and the sounds coming from inside the home were speculative and not exigent. *Id.* at 5-8.

As discussed in the R&R, warrantless searches are presumptively unreasonable, "subject only to a few specifically established and well-delineated exceptions." R&R at 7 (citing *United States v. Cooks*, 920 F.3d 735, 741 (11th Cir. 2019) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967))). "One such exception is that the police may enter a private premises and conduct a search if 'exigent circumstances' mandate immediate action." *Id.*

6

(citing *United States v. Holloway*, 290 F.3d 1331, 1334 (11th Cir. 2002) (citation omitted)). The R&R further explains that it is the government that bears the burden of proof of showing exigent circumstances. *Id.* (citing *United States v. Tovar-Rico*, 61 F.3d 1529, 1535 (11th Cir. 1995)). The Magistrate Judge thoroughly sets out the law governing the exigency exception, including, as relevant here, the application of the exception in circumstances involving the need to protect or preserve life, referred to as the emergency aid exception. *See* R&R at 8. The Magistrate Judge also thoroughly analyzed the evidence supporting application of the exception to justify the officers' warrantless entries onto and into the Defendants' property.

As the Magistrate Judge explains, prior to entering the curtilage, officers had received ShotSpotter alerts for a single gunshot approximately two hours earlier and then another for sixteen gunshots only minutes earlier. The officers encountered a car leaving the area of the Defendants' home at a high rate of speed and, when the car was stopped, the occupants stated they heard multiple gunshots. And, the officers encountered an individual, who indicated they wanted to remain anonymous, who told the officers they heard gunshots and pointed to the Defendants' home. *See* R&R (citing record exhibits and Officer Castelli testimony). After they entered the curtilage, officers observed two firearms, including one AK-style weapon, in plain view in a car parked on the property. The officers then proceeded to the front door of the home, where they encountered Monestime. While with Monestime, and prior to entering the home, the officers saw what appeared to be blood on his pants, and they heard what sound like cries or whimpering from someone inside the home. In addition, when they asked Monestime whether anyone was in the home, he responded that his roommate's girlfriend may be there and that they often argued.

7

The Magistrate Judge concluded that the United States had satisfied its burden of demonstrating that the exigent circumstances exception, and, specifically, the emergency aid exception, justified the officers' entry into the curtilage and the home without a warrant. After conducting an independent, *de novo* review of the record, exhibits, and testimony, the undersigned agrees.

As noted above, Monestime has not offered any additional arguments or authority in his Objections that he did not already present to the Magistrate Judge in his Motion. In any event, in his Objections, as in his Motion, Monestime essentially challenges whether any one of the circumstances confronted by the officers was sufficiently reliable or independently justified the exigency. Monestime does not appear to acknowledge that the Court considers the totality of the circumstances and whether, under the totality of the circumstances, there was an objectively reasonable basis for the officers' belief that medical assistance was needed or persons were in danger inside the house. *See United States v. Evans*, 958 F.3d 1102, 1106 (11th Cir. 2020) ("The specific test is not whether the officer actually believed that there was an emergency inside the house, but 'whether there was an objectively reasonable basis for believing that medical assistance was needed, or persons were in danger.") (quoting *Michigan v. Fisher*, 558 U.S. 45, 49 (2009) (internal citation omitted). As the Eleventh Circuit explained in *Evans*:

> Our precedents do not require police to "know the unknowable on pain of suppression." *Montanez v. Carvajal*, 889 F.3d 1202, 1210 (11th Cir. 2018). As the Supreme Court said in *Fisher*, officers "do not need ironclad proof of a likely serious, life-threatening injury to invoke the emergency aid exception." 558 U.S. at 49, 130 S. Ct. 546 (quotation marks omitted). *Cf. Holloway*, 290 F.3d at 1340 ("People could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process." (quoting *Wayne v. United States*, 318 F.2d 205, 212 (D.C. Cir. 1963))). Instead, we look to the entirety of the circumstances to see whether a reasonable officer, confronted with those

8

circumstances, could have objectively believed that an immediate search was necessary to safeguard potential victims.

958 F.3d at 1106.

The undersigned is satisfied that given the totality of the circumstances with which the officers were confronted in this case, they could have objectively believed that an immediate search was necessary to safeguard potential victims. Therefore, this Court rejects Monestime's Objections to the Magistrate Judge's determination that exigent circumstances justified the warrantless entry onto and into Defendants' property.

### C. The Need For A Franks Hearing.

Monestime objects to the Magistrate Judge's determination that he had not made the substantial preliminary showing necessary to warrant a *Franks* Hearing. Again, he offers no additional authority or support for his claim that there were misrepresentations or material omissions in the warrant application that warrant a *Franks* Hearing. Based on a *de novo* review of the record and transcript, this Court agrees with the Magistrate Judge's conclusion that the evidence and argument proffered by Monestime was and is conclusory and lacks support or explanations concerning why the allegedly omitted information was critical to the probable cause determination. The record does not support Monestime's arguments in support of the need for a *Franks* Hearing, and the Magistrate Judge did a thorough job of explaining why the issues raised by Monestime do not warrant a hearing. As such, this Court rejects his objections to the R&R on this issue, as well.

### D. Objections Based On Alleged Overbreadth And Lack Of Particularity In Warrant.

Monestime objects to the Magistrate Judge's failure to consider his arguments regarding the alleged lack of particularity and overbreadth of the warrant obtained for the search of the Defendants' home. The record does reflect that Monestime did not pursue this

9

issue at the hearing before the Magistrate Judge, and the argument included in the underlying Motion to Suppress is very barebones. Nonetheless, this Court has conducted a *de novo* review of the record and finds that his claims regarding the warrant are unavailing.

"The Fourth Amendment requires a warrant to 'particularly' describe 'the place to be searched, and the persons or things to be seized.'" *United States v. McCall*, 84 F.4th 1317, 1327 (11th Cir. 2023) (quoting U.S. Const. amend. IV). While recognizing the importance of the particularity requirement, the Eleventh Circuit has indicated it should be applied with "a practical margin of flexibility" and that warrants need only be as "specific as the circumstances and nature of the activity under investigation permit[ ]." *United States v. Alford*, 744 F. App'x 650, 652–53 (11th Cir. 2018) (citing *United States v. Bradley*, 644 F.3d 1213, 1259 (11th Cir. 2011); *United States v. Moody*, 977 F.2d 1425, 1432 (11th Cir. 1992)).

Here, the search warrant needs to be considered in the context of what the officers observed when they entered the home – which entry this Court has already found to be permissible. The officers observed multiple firearms and spent casings, garbage bags full of mail, papers, and checks bearing different identifying information, and a printer. *See* Warrant [ECF No. 103-1]. The officers later indicate that when executing the original warrant, officers observed evidence of narcotics, and, therefore, submitted an amended application to include that evidence and the request to search for such evidence. *Id*. In this context, the warrant, which did seek a somewhat broad variety of evidence, makes sense. The evidence observed in plain view included evidence of gun-related and possibly violent crimes, as well as financial or identity-theft related crimes, and narcotics-related crimes. In this regard, the warrant did not lack particularity and was not overbroad. The probable cause affidavit sufficiently detailed the information available to the officers developed that night and identified the variety of

crimes suspected. The warrant was supported by probable cause to search for items related to these different types of potential criminal activity and for additional information pertinent to establishing and confirming the identities of the individuals associated with the evidence. In short, the undersigned is satisfied that there is no basis for resulting evidence to be suppressed on the basis that the search warrant is overbroad or insufficiently particular.

In the alternative, this Court is satisfied that the good faith exception applies. When an officer has obtained a search warrant from a judge or magistrate and has acted within its scope in good faith, "there is no police illegality and thus nothing to deter." *United States v. Leon*, 468 U.S. 897, 921 (1984). There is no evidence that the search warrant is "so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized— that the executing officers c[ould not have] reasonably presume[d] it to be valid." *Id.* at 923 (citation omitted). It indicated there was probable cause to believe that there was evidence of gun-related and identity theft or document related crimes, and it was sufficiently detailed that a reasonable officer would have believed in good faith that the warrant was valid. Pursuant to the good faith exception, the Court may suppress evidence obtained in violation of the Fourth Amendment "only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Illinois v. Krull*, 480 U.S. 340, 348–49 (1987). There is no basis for the Court to reach such a conclusion on the allegations here. Any deterrence benefits of suppression of evidence do not outweigh its costs in this case.

Therefore, even if the challenges to the breadth and particularity of the warrant had been properly preserved, this Court rejects those challenges, as well.

Finally, having identified no preceding constitutional violation, this Court finds that the fruit of the poisonous tree doctrine does not apply to any downstream evidence in this case.

## IV.   CONCLUSION

Based on the foregoing, after a *de novo* review of the record, this Court agrees with the thorough, well-reasoned analysis and conclusions by the Magistrate Judge in the R&R. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that the Report **[ECF No. 134]** is **AFFIRMED AND ADOPTED** and incorporated herein for appellate purposes. It is further

**ORDERED AND ADJUDGED** that Defendant Monestime's Motion to Suppress **[ECF No. 92]** is **DENIED**. It is further

**ORDERED AND ADJUDGED** that Defendants Angel Gonzalez and Azahares's Motions to Join **[ECF Nos. 99 and 111]** are **GRANTED**.

**DONE AND ORDERED** in Chambers in the Southern District of Florida, this 13th day of November, 2025.

_____
**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**